UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

                                            Chapter 11
John R. Escobio and Melissa M. Escobio,     Case No.: 8:13-bk-00721-MGW

        Debtors.
_____/

## DEBTORS' AMENDED
## PLAN OF REORGANIZATION

                        /s/ Leon A. Williamson, Jr.
                        Leon A. Williamson, Jr.
                        Florida Bar Number 363537
                        Law Office of Leon A. Williamson, Jr., P. A.
                        306 South Plant Ave., Suite B
                        Tampa, FL 33606
                        Telephone (813) 253-3109
                        Facsimile (813) 253-3215
                        Leon@LwilliamsonLaw.com
                        *Attorney for Debtor*

Dated: October 1, 2013

THIS PLAN OF REORGANIZATION HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE HEARING TO CONSIDER THE CONFIRMATION OF THIS PLAN OF REORGANIZATION PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE **IS** CURRENTLY SCHEDULED FOR **October 2, 2013 AT 10:00 AM.** THE DEBTORS RESERVE THE RIGHT TO MODIFY AND SUPPLEMENT THIS PLAN OF REORGANIZATION AND THE ACCOMPANYING DISCLOSURE STATEMENT UP TO AND INCLUDING THE TIME OF CONFIRMATION OF THE PLAN OF REORGANIZATION.

PURSUANT TO § 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED IN THIS PLAN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST, AND IMPAIRED EQUITY INTERESTS IN, THE DEBTORS ENTITLED TO VOTE ON THIS PLAN. THE PLAN PROPONENT RESERVES THE RIGHT TO FILE FURTHER AMENDED OR AMENDED AND RESTATED PLANS AND DISCLOSURE STATEMENTS FROM TIME TO TIME. REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING

INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESSES, PROPERTIES, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS THAT HAVE OCCURRED TO DATE IN THESE CASES, AND THE MEANS OF FUNDING THIS PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETIES BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS ADMISSIONS OR STIPULATIONS, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS.

## AMENDED PLAN OF REORGANIZATION
### John R. Escobio and Melissa M. Escobio

The Debtors, John R. Escobio and Melissa M. Escobio ("Debtors" or "Escobio") proposes the following plan of reorganization (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code for resolution of outstanding Claims (as defined below) and Interests (as defined below). Reference is made to the Disclosure Statement (as defined below), distributed contemporaneously with the Plan for a discussion of the Debtors' history, businesses, properties, results of operations, projections for operations, risk factors and a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan. The Debtors is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. The Disclosure Statement in connection with this Chapter 11 Plan of Reorganization has not been approved by the Bankruptcy Court. The consolidated hearing to consider the adequacy of the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code and to consider confirmation of this Plan is currently scheduled for October 2, 2013 at 10:00. The Debtors reserves the right to modify or supplement this Plan of Reorganization prior to and including the time of approval of the Disclosure Statement.

## ARTICLE 1
## DEFINITIONS AND CONSTRUCTION OF TERMS

Definitions; Interpretation; Application of Definitions and Rules of Construction. For purposes of this Plan, the following terms shall have the meanings specified in this Article 1. A term used herein that is not specifically defined, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code, and the rules of construction contained in Section 102 of the Bankruptcy Code shall apply. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in this Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, this Plan, and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular Section, sub-Section or clause contained in this Plan.

1.1    "Administrative Claim" or "Administrative Expense Claim" shall mean a right to payment under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case as authorized and approved by a Final Order, (b) any actual and necessary costs and expenses incurred after the Petition Date in the ordinary course of the Debtor's business, (c) fees and expenses of Professionals to the extent allowed by Final Order under Sections 330, 331, or 503 of the Bankruptcy Code, and (d) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.2    "Administrative Claims Bar Date" shall mean the last date established for filing Administrative Claims, as ordered by the Bankruptcy Court.

1.3    "Affiliate" shall have the meaning set forth in 11 U.S.C. § 101(2).

1.4    "Allowed" shall mean, with reference to any Claim: (a) a Claim that has been listed by the Debtors in his Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed; (b) a Claim as to which a timely proof of claim has been filed as of the Bar Date in a sum certain and either (i) no objection thereto, or application to estimate, equitably subordinate, reclassify or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate, reclassify or otherwise limit recovery, has been interposed, the extent to which such Claim (whether in whole or in part) has been allowed by a Final Order; (c) a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; (d) any Claim expressly allowed under this Plan; or (e) any Claim expressly allowed by Final Order.

1.5    "Allowed Class Designation/Type" shall mean an Allowed Claim of a specified Class or of a specified type.

1.6    "Avoidance Action" shall mean an action brought pursuant to Section 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code by or on behalf of the Debtors.

1.7    "Ballot" shall mean the form or forms distributed to each holder of an impaired Claim entitled to vote on this Plan upon which an acceptance or rejection of this Plan shall be indicated in accordance with the instructions specified in such form or forms.

1.8    "Bankruptcy Code" means Title 11 of the Bankruptcy Reform Act of 1978, as set forth in Sections 101, et seq. of Title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and as otherwise amended from time to time, and applicable portions of Titles 18 and 28 of the United States Code, as amended from time to time.

1.9    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Chapter 11 Cases and, to the

3

extent of any reference under 28 U.S.C. § 157, the bankruptcy unit of such District Court under 28 U.S.C. § 151.

1.10    "Bankruptcy Rules" shall mean the following: (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under Section 2075 of Title 28 of the United States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under Section 2072 of Title 28 of the United States Code; (iii) the applicable Local Rules of Civil Practice and Procedure of the United States District Court for the Middle District of Florida; and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceeding therein, as the case may be.

1.11    "Bar Date" shall mean the date(s) fixed by the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines (Docket No. 4) dated October 12, 2010 (the "Order Setting Deadlines") by which Persons asserting a Claim against the Debtors, and who are required to file a proof of claim on account of such Claim, must file a proof of claim or be forever barred from asserting a Claim against the Debtors or their property and from voting on this Plan and/or sharing in distributions hereunder.

1.12    "Business Day" shall mean any day other than a Saturday, Sunday or a day in which in Tampa Florida is a legal holiday or any day designated in Bankruptcy Rule 9006(a) as a "legal holiday."

1.13    "Cash" shall mean cash, cash equivalents and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.14    "Causes of Action" shall mean, without limitation, any and all actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims and demands whatsoever, whether known or unknown, in law, equity or otherwise.

1.15    "Chapter 11 Case" shall mean the Debtors' case under Chapter 11 of the Bankruptcy Code.

1.16    "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed undisputed, secured or unsecured.

1.17    "Class" shall mean any category of Claims or Equity Interests which are substantially similar to each other as classified.

4

1.18   "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

1.19   "Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.20   "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.21   "Confirmation Order" shall mean the order of the Bankruptcy Court confirming this Plan pursuant to the provisions of the Bankruptcy Code.

1.22   "Contingent Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court which was not filed in a sum certain, or which has not accrued and is dependent upon a future event that has not occurred or may never occur.

1.23   "Creditor" shall mean a Person that has a Claim or Claims against one or more of the Debtors that arose at the time of or before the Petition Date, or a Person that has a Claim against one or more of the Estate of the Debtors of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.24   "Cure" shall mean with respect to the assumption of an executory contract or unexpired lease pursuant to Section 365(b) of the Bankruptcy Code, the (a) distribution of Cash, such other property, including New Common Stock, as may be agreed by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed by the parties under an executory contract or unexpired lease, to the extent such obligation and enforceable under the Bankruptcy Code and applicable bankruptcy law, or (b) the taking of such other actions as may be agreed by the parties or ordered by the Bankruptcy Court.

1.25   "Cure Claim" shall mean the aggregate dollar amount necessary to constitute a Cure with respect to the assumption of any specific executory contract or unexpired lease as agreed between the parties or ordered by the Bankruptcy Court.

1.26   "Debt" shall mean liability on a Claim.

1.27   "Debtors" shall mean John R. Escobio and Melissa M. Escobio ("Escobio").

1.28   "DIP Facility" shall mean any agreement, document, loan, or other arrangement approved by the Bankruptcy Court, by which the Debtors have obtained post-petition financing, and any related loan or security documents.

1.29   "Disallowed" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in any of the Debtors which: (a) has been disallowed, in whole or part,

by a Final Order of the Bankruptcy Court; (b) has been withdrawn by agreement of the Debtor and the holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the holder thereof; (d) if listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a proof of claim has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any proof of claim or proof of interest; or (f) is evidenced by a proof of claim or a proof of interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court but as to which such proof of claim or proof of interest was not timely or properly filed. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

1.30    "Disallowed Claim" shall mean a Claim, or any portion thereof, that is Disallowed.

1.31    "Disclosure Statement" shall mean the disclosure statement relating to this Plan in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and all exhibits and schedules thereto.

1.32    "Disputed" shall mean, with respect to Claims or Equity Interests, any such Claim or Equity Interest: (a) that is listed in the Schedules as unliquidated, disputed or contingent for which no proof of claim has been timely filed; (b) as to which a Debtors or any other party-in-interest has interposed a timely objection or request for estimation, or have sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by a Debtors in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; (c) which is a contingent Claim; or (d) which has not been Allowed.

1.33    "Distribution" shall mean the distribution in accordance with this Plan of Cash or other property, as the case may be.

1.34    "Distribution Account" or "Distribution Accounts" means one or more deposit accounts (also referred to herein as "Plan Fund(s)") established for the benefit of one or more classes of Creditors in order to receive and hold funds payable to the Holders of Allowed Claims in such classes and to facilitate all payments required to be made to the Holders of Allowed Claims in such classes under this Plan.

1.35    "Distribution Address" shall mean the last known address of a Creditor, whether derived from the Schedules, a proof of claim filed with the Bankruptcy Court or other written notification of the Debtor as to where a Distribution under this Plan is to be sent.

1.36    "Distribution Date" shall mean any date that is: (a) the Initial Distribution Date; (b) any Subsequent Distribution Date; or (c) the Final Distribution Date.

1.37    "District Court" shall mean the United States District Court for the Middle District of Florida.

1.38    "Effective Date" shall mean a Business Day on or after the Confirmation Date specified by the Debtors on which all conditions precedent to the occurrence of the Effective Date set forth in Article 9.2 of this Plan have been satisfied or waived pursuant to Article 9.3 of this Plan.

1.39    "Estate" shall mean the Estate created in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

1.40    "Exit Financing" shall mean the agreements and related documents and instruments evidencing the new financing (if any) to be obtained by the Debtors as of the Effective Date, which may include revolving credit, term credit, convertible debt or equity, and/or letters of credit as the Reorganized Debtors deem necessary to support the payments required to be made under the Plan, pay transactions costs, and fund working capital and general corporate purposes of the Debtors following the Effective Date, and having terms agreed to by the Debtors, which terms shall be substantially in accordance with terms to be included in the Plan Supplement.

1.41    "Final Approval" shall mean the date on which an order in the Chapter 11 Cases confirming a plan of reorganization for the Debtors that has become final and no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.42    "Final Distribution Date" shall mean the date established by the Debtors pursuant to which all Distributions shall have been made.

1.43    "Final Order" shall mean an order, ruling or judgment of the Bankruptcy Court as to which the time to appeal, petition for *certiorari,* or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari,* or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for *certiorari,* reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, on and after the Effective Date, Reorganized Debtors or, in the event that an appeal, writ of *certiorari,* or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari,* reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.44    "General Unsecured Claim" or "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Priority Claim, Secured Claim, Unsecured Convenience Claim, or Equity Interest.

1.45    "Initial Distribution Date" shall mean, with respect to (a) with respect to the Distribution of Cash on account of Allowed Claims (i) as soon as practicable following the Effective Date or (ii) on the first date such Cash payment may be due under the Plan.

1.46    "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

1.47    "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548 or 549 of the Bankruptcy Code shall not constitute a lien.

1.48    "Person" shall mean any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, estate, trust, unincorporated association or organization, governmental agency or political subdivision thereof, or other entity.

1.49    "Petition Date" shall mean October 11, 2010, the date on which the Debtors filed its voluntary Chapter 11 petition with the Bankruptcy Court pursuant to the Bankruptcy Code.

1.50    "Plan" shall mean this Chapter 11 Plan of Reorganization, including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the terms hereof or as approved by the Bankruptcy Court.

1.51    "Plan Documents" shall mean the Plan, the Disclosure Statement, all exhibits and schedules attached (or to be attached or supplemented) to the Plan and to the Disclosure Statement.

1.52    "Plan Supplement" shall mean one or more filings by the Debtors prior to the Confirmation Hearing to supplement this Plan which shall contain, among other things, any commitment agreement for the Exit Financing, any new corporate governance documents, and any other documents not initially included in the Disclosure Statement.

1.53    "Priority Claims" shall mean any and all Claims (or portions thereof), if any, entitled to priority under Sections 503(b) and 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Claims.

1.54    "Priority Tax Claim" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.55    "Pro Rata Share" shall mean a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

1.56    "Professional Fees" shall mean the reasonable fees and expenses of Professionals.

1.57   "Professionals" shall mean those Persons (a) employed by the Debtors pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328,
329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.58   "Record Date" shall mean the date established in the Confirmation Order for determining the identity of holders of Allowed Claims or Allowed Interests entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order, then the Record Date shall be the Confirmation Date.

1.59   "Reorganized Debtors" shall mean the Debtors after the Effective Date.

1.60   "Schedules" shall mean, collectively, the schedules of assets and liabilities, the lists of holders of interests and the statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

1.61   "Secured Claim" shall mean any Claim which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

1.62   "Setoff" shall mean any right of a Creditor to offset a mutual debt owing by such Creditor and any right of the corresponding Debtors to offset a mutual debt owing by a Debtors to a Creditor against a Claim of that Debtors, including, without limitation, such rights under Section 553 of the Bankruptcy Code.

1.63   "Subordinated Claim" shall mean any Claim: (a) payment of which is subordinated in right of treatment or payment to other Claims under an agreement enforceable under applicable non-bankruptcy law, but only to the extent provided in such agreement; (b) for reimbursement or contribution of a Person that is liable with a Debtors on another Creditor's Allowed Claim unless and until such Claim is paid in full; or (c) subordinated in right of treatment or payment pursuant to Sections 509(c) or 510 of the Bankruptcy Code.

1.64   "Subsequent Distribution Date" shall mean one or more dates following the Initial Distribution Date at which time the Reorganized Debtors make Distributions pursuant to the Plan, other than the Final Distribution Date.

1.65   "Tax Claim" shall mean an Allowed Claim for an amount entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.66   "Unclaimed Property" shall mean any Distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to this Plan that: (a) is returned to the Reorganized Debtors as undeliverable and no appropriate forwarding address is received within the later of

one (1) year after the Effective Date and one (1) year after Distribution is made to such holder; or (b) in the case of a Distribution made in the form of a check, is not negotiated and no request for reissuance is made by the holder of such Allowed Claim.

1.67    "Unsecured Claim" shall mean a Claim for which no property of any kind of the Debtors' Estates serves as security or Collateral.

## ARTICLE 2
## TREATMENT OF ALLOWED ADMINISTRATIVE
## CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    Non-Classification. As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtors are not classified for the purposes of voting on or receiving Distributions under this Plan. Such Unclassified Claims shall be treated as set forth below.

2.2    Administrative Claims.

2.2.1    In General. Except as otherwise provided in the Plan, all Administrative Claims shall be (a) paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court upon the later of (i) the Effective Date, (ii) the date upon which there is a Final Order allowing such Claim as an Administrative Claim, or (iii) any other date specified in such order, or (b) as may be agreed upon between the holder of such Administrative Claim and the Debtors, provided, however, that Allowed Administrative Claims with respect to fixed and undisputed obligations incurred by a Debtors in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

2.2.2    Professional Compensation and Expense Reimbursement Claims. Except as otherwise provided herein, all Persons seeking an award by the Bankruptcy Court of Professional Fees, or, as may be ordered by the Bankruptcy Court, of compensation for services rendered to the Debtors or reimbursement of expenses incurred through and including the Effective Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, (a) shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date **within thirty (30) days** after the Effective Date, and (b) if granted such an award by the Bankruptcy Court, shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Claim and the Debtors or, on and after the Effective Date, Reorganized Debtors, or (iii) in accordance with the terms of any applicable order entered by the Bankruptcy Court. Parties-in-interest shall have twenty (20) days after the filing of a final fee application to object to such fee application. All Professional Fees for services rendered after the Effective Date, including, without limitation, the prosecution of Causes of Action preserved hereunder and the resolution of Disputed Claims, shall be paid by the Reorganized Debtors upon receipt of an invoice therefor, or on such other terms as the

Reorganized Debtors may agree to, without the need for further Bankruptcy Court authorization or entry of a Final Order. If the Reorganized Debtors and any Professional cannot agree on the amount of post-Effective Date fees and expenses to be paid to such Professional, such amount shall be determined by the Bankruptcy Court.

2.2.3   Claims for the Value of Goods Received Within Twenty Days Before the Petition Date. All Persons asserting an Administrative Claim for the value of any goods sold to the Debtors in the ordinary course of business and received by the Debtors within the twenty (20) days immediately prior to the Petition Date must (a) be the holder of a Claim that is not a Disputed Claim or a Disallowed Claim, and (b) timely file and serve an application for allowance and payment of such Claim to the extent it is entitled to treatment under Section 503(b)(9) of the Bankruptcy Code. Holders of Claims entitled to treatment under Section 503(b)(9) shall file their application for allowance of such Claim by the Administrative Claims Bar Date. If approved by the Bankruptcy Court, the portion of such Claim entitled to treatment under Section 503(b)(9) shall be paid as an Allowed Administrative Claim (i) on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Claim and the Reorganized Debtors, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. The Debtors and all other parties-in-interest shall have thirty (30) days after the filing of any such application to object to that application, unless otherwise ordered by the Bankruptcy Court. To the extent the holder of a Claim entitled to treatment under Section 503(b)(9) of the Bankruptcy Code fails to file an application for allowance and payment of such Claim as provided in this sub-section, or the Bankruptcy Court disapproves an application for treatment of a Claim under Section 503(b)(9) of the Bankruptcy Code, to the extent otherwise Allowed such Claim shall classified and treated under this Plan as a Class 6 General Unsecured Claim without regard to the provisions of Section 503(b)(9) of the Bankruptcy Code.

2.2.4   U.S. Trustee's Claims. U.S. Trustee Claims that are unpaid as of the Effective Date will be paid in Cash on the Effective Date.

2.2.5   Priority Tax Claims. Allowed Unsecured Priority Tax Claims shall be paid in full, in cash, upon the later of: (a) the Effective Date; (b) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Tax Claim; (c) the date that such Allowed Priority Tax Claim would have been due if the Chapter 11 Cases had not been commenced; or (d) upon such other terms as may be agreed to between a respective Debtor and any holder of an Allowed Priority Tax Claim; provided, however, that the Debtors may, at their option, in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, make cash payments respecting Allowed Priority Tax Claims deferred to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, the principal amount of such Allowed Priority Tax Claims shall be amortized and payable in equal annual installments over five (5) years from the order of relief (by October 9, 2013) and interest shall accrue from the Effective Date on the unpaid portion of such Allowed Priority Tax Claim at: (i) any applicable statutory rate; (ii) the rate applicable to federal judgments pursuant to 28 U.S.C. § 1961; or (iii) a rate to be agreed to

by the Debtors (or the Reorganized Debtors, as the case may be) and the appropriate governmental unit or, if they are unable to agree, as determined by the Bankruptcy Court.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS

Claims (other than Allowed Administrative Claims and Allowed Priority Tax Claims) and Equity Interests are classified for all purposes, including voting on confirmation and distribution pursuant to this Plan, as follows:

| Class | Description | Status | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority | Unimpaired | No |
| Class 2 | Secured Claim of Hillsborough County Tax Collector | Unimpaired | No |
| Class 3 | Secured Claim of Regions | Impaired | Yes |
| Class 4 | Secured Claim of FNMA | Impaired | Yes |
| Class 5 | Secured Claim of Ocwen | Impaired | Yes |
| Class 6 | Secured Claim of Wells Fargo | Impaired | Yes |
| Class 7 | Secured Claim of Regions | Impaired | Yes |
| Class 8 | Secured Claim of HSCB | Impaired | Yes |
| Class 9 | Secured Claim of FNMA | Impaired | Yes |
| Class 10 | Secured Claim of Aurora | Impaired | Yes |
| Class 11 | Secured Claim of FNMA | Impaired | Yes |
| Class 12 | Secured Claim of One West | Impaired | Yes |
| Class 13 | Secured Claim of HSCB | Impaired | Yes |
| Class 14 | Secured Claim of US Bank | Impaired | Yes |
| Class 15 | General Unsecured Claims | Impaired | Yes |
| Class 16 | Equity Interest of Debtors | Un-Impaired | No |

12

# ARTICLE 4
# TREATMENT OF CLAIMS

## 4.1    CLASS 1 – OTHER PRIORITY CLAIMS.

4.1.1    Impairment and Voting. Class 1 is unimpaired by this Plan. Consequently, each holder of an Allowed Priority Claim is conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

4.1.2    Treatment. Holders of claims in this class, if any, will be paid in full, in cash, upon the later of the Effective Date (as defined in this Plan), or the date on which such claim is due under applicable non-bankruptcy law.

## 4.2    CLASS 2 – SECURED CLAIM OF HILLSBOROUGH COUNTY TAX COLLECTOR.

4.2.1    Impairment and Voting. The Class 2 Secured Claim is un-impaired by this Plan and the holder of the Class 2 Claim conclusively presumed to have accepted this Plan and is not entitled to vote to accept or reject this Plan.

4.2.2    Treatment. The Allowed  Secured Claims of the Hillsborough County Tax Collector ("Tax Collector") shall be paid in full, in cash, upon the later of: (a) the Effective Date; (b) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Tax Claim; (c) the date that such Allowed Priority Tax Claim would have been due if the Chapter 11 Cases had not been commenced; or (d) upon such other terms as may be agreed to between the Debtors and the Tax Collector; provided, however, that the Debtors may, at their option, in lieu of payment in full of the Allowed Claims of the tax Collector on the Effective Date, make cash payments respecting Allowed Secured Claims deferred to the extent permitted by Section 1129(a)(9) of the Bankruptcy Code and, in such event, the principal amount of such Allowed Secured Claims of the Tax Collector shall be amortized and payable in equal annual installments over five (5) years from the order of relief and interest shall accrue from the Effective Date on the unpaid portion of such Allowed Secured Claims of the Tax Collector at: (i) any applicable statutory rate; (ii) the rate applicable to federal judgments pursuant to 28 U.S.C. § 1961; or (iii) a rate to be agreed to by the Debtors (or the Reorganized Debtors, as the case may be) and the appropriate governmental unit or, if they are unable to agree, as determined by the Bankruptcy Court.

4.2.3    Mortgage and Liens. The holder of this Secured Claim shall retain its lien on the real property of Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.3** **CLASS 3 – SECURED CLAIM OF REGIONS BANK - 508 East Virginia Ave., Tampa, Florida.**

4.3.1 Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.3.2 Treatment. The allowed secured amount of this claim will equal $54,000.00. This allowed secured claim will be equally amortized over a 30 year loan term commencing on the Effective Date, at an interest rate of 5.25% per annum. The Debtor will also pay all escrows and other fees required by the loan documents. The balance of this claim shall be treated as an allowed unsecured claim.

4.3.3 Mortgage and Liens. The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.4** **CLASS 4 – SECURED CLAIM OF FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA") - 1102 East 28th Avenue, Tampa, Florida 33605 ("1102 Property").**

4.4.1 Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.4.2 Treatment. The Debtors and FNMA entered into a stipulation regarding the value of the 1102 Property and the amount of this secured claim. The Court entered an *Agreed Order Granting Motion to Determine Secured Status of Federal National Mortgage Association* (Doc. No. 141) whereby the Court ruled that the allowed secured claim of FNMA with respect to the 1102 Property is $26,676.00. The Debtors and FNMA also entered into a stipulation regarding an agreed plan treatment (Doc. No. 132) the provisions of which are incorporated by reference. The Debtor will pay this allowed secured claim as a re-amortized first mortgage with interest at a rate of 5.25% in equal monthly installments over a period of 360 months of $147.31 each. The escrow portion of the payment for property tax and property insurance shall be added to the monthly principal and interest payment amount and calculated in any new payments to be made under the Plan. The Debtors remain liable for all post-petition taxes and insurance advanced by FNMA. The balance of this claim shall be treated as an allowed unsecured claim. Missed adequate protection payments shall be paid within thirty (30) days of confirmation, $589.14 being due as of October 1, 2013.

4.4.3 Mortgage and Liens. The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the

Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.5    CLASS 5 – SECURED CLAIM OF OCWEN LOAN SERVICING, LLC ("OCWEN") - 1812 Marvy Avenue, Tampa, Florida ("Marvy Property").**

4.5.1    Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.5.2    Treatment.    The Debtors and Ocwen have entered into a stipulation regarding the value of the Marvy Property and therefore the amount of Ocwen's allowed secured claim, as well as Ocwen's plan treatment with respect to this secured claim (Doc. No. 137). The allowed secured amount of this claim will equal $47,000.00. The allowed amount of this secured claim shall be equally amortized over the balance of the contractual loan term, which expires on November 1, 2032, at an annual interest rate of 4.5%. The Debtors shall also pay going forward all contractually required escrow amounts relative to real property taxes and insurance. The balance of this claim shall be treated as an allowed unsecured claim.

4.5.3    Mortgage and Liens. The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.6    CLASS 6 - SECURED CLAIM OF WELLS FARGO BANK, N.A. ("Wells Fargo") - 3611 Danny Bryan Boulevard, Tampa, Florida 33619 ("Danny Bryan Property").**

4.6.1    Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.6.2    Treatment.    With respect to this allowed secured claim of Wells Fargo on the Danny Bryan Property, the Court entered an *Amended Agreed Order Granting Motion to Determine Secured Status of Wells Fargo Bank, N. A.* (Doc. No. 162), the provisions of which are incorporated by reference. Wells Fargo shall have an allowed secured claim of $37,916.00. Monthly payments on this allowed secured claim will be equally amortized over the balance of the loan term which expires on May 15, 2038, at an interest rate of 5.25% per annum. There will be no balloon payment. The Debtor will reimburse Wells Fargo the sum of $1,151.90 at zero interest, for a post-petition tax advance made by Wells Fargo. This will be a separate secured payment. Payment shall be paid at $191.98 for months one (1) through five (5) and $192.00 for month six (6). These payments will commence no later than 60 days from the entry of the Order (Doc. No. 162) which was August 22, 2013. Escrow payments will be made by the Debtor under the plan. The current escrow payment (subject to change) equals $94.22 per month. The balance of this claim shall be treated as an allowed unsecured claim.

4.6.3    Mortgage and Liens. The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.7    CLASS 7 - SECURED CLAIM OF REGIONS BANK - 4203 North 14th Street, Tampa, Florida.**

4.7.1   Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.7.2   Treatment.    This claim will be an allowed secured claim in the amount of $45,000.00. This allowed secured claim will be equally amortized over a 30 year loan term commencing on the Effective Date, at an interest rate of 5.25% per annum. The Debtor will also pay all escrows and other fees required by the loan documents. The balance of this claim shall be treated as an allowed unsecured claim.

4.7.3   Mortgage and Liens.  The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.8    CLASS 8 - SECURED CLAIM OF HSBC BANK USA ("HSBC") - 4205 North 14th Street, Tampa, Florida ("14th Street Property").**

4.8.1   Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.8.2   Treatment.    The Court has entered an *Order Granting Motion to Determine Secured Status of HSBC Bank USA* (Doc. No. 117), whereby the Court ruled that HSBC would have an allowed secured claim of $39,813.00 on account of the mortgage on the 14th Street Property and that the balance of this claim would be a general unsecured claim. Therefore, HSBC shall have an allowed secured claim of $39,813.00 on account of this Class 8 secured claim and the mortgage on the 14th Street Property. Monthly payments on this allowed secured claim will be equally amortized over the loan term which expires on May 1, 2034, at an interest rate of 5.25% per annum. Escrow payments and other amounts required by the loan documents will be made by the Debtor under the plan. The balance of this claim shall be treated as an allowed unsecured claim.

4.8.3   Mortgage and Liens.  The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.9    CLASS 9 - SECURED CLAIM OF FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA") - 5849 Wilson Drive, Zephyrhills, Florida ("Wilson Property").**

4.9.1   Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.9.2   Treatment.      The Debtors and FNMA entered into a stipulation regarding the value of the Wilson Property and the amount of this secured claim. The Court entered an *Agreed Order Granting Motion to Determine Secured Status of Federal National Mortgage Association* (Doc. No. 140) where by the Court ruled that the allowed secured claim of FNMA with respect to the Wilson Property is $39,318.00. The Debtors and FNMA also entered into a stipulation regarding an agreed plan treatment (Doc. No. 133), the provisions of which are incorporated by reference. The Debtor will pay this allowed secured claim as a re-amortized first mortgage with interest at a rate of 5.25% in equal monthly installments over a period of 360 months of $217.12 each. The escrow portion of the payment for property tax and property insurance shall be added to the monthly principal and interest payment amount and calculated in any new payments to be made under the Plan. The Debtors remain liable for all post-petition taxes and insurance advanced by FNMA. The balance of this claim shall be treated as an allowed unsecured claim.  Missed adequate protection payments shall be paid within thirty (30) days of confirmation, $651.36 being due as of October 1, 2013.

4.9.3   Mortgage and Liens.  The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.10    CLASS 10 - SECURED CLAIM OF AURORA LOAN SERVICES ("Aurora") - 7514 North Hubert Av., Tampa, Florida ("Hubert Property").**

4.10.1 Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.10.2 Treatment.      The Court has entered an *Order Granting Motion to Determine Secured Status of Aurora Loan Services, LLC* (Doc. No. 118), whereby the Court ruled that Aurora would have an allowed secured claim of $54,380.00 on account of the mortgage on the Hubert Property and that the balance of this claim would be a general unsecured claim. Therefore, Aurora shall have an allowed secured claim of $54,380.00 on account of this Class 10 secured claim and the mortgage on the Hubert Property. Monthly payments on this allowed secured claim will be equally amortized over the balance of the loan term which expires on February 2036, at an interest rate of 5.25% per annum. Escrow payments and other amounts required by the loan documents will be made by the Debtor under the plan. The balance of this claim shall be treated as an allowed unsecured claim.

4.10.3 Mortgage and Liens.  The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.11    CLASS 11 - SECURED CLAIM OF FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA") - 8516 North Taliaferro Av., Tampa, Florida ("Taliaferro Property").**

4.11.1 Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.11.2 Treatment.    The Debtors and FNMA entered into a stipulation regarding the value of the Taliaferro Property and the amount of this secured claim. The Court entered an *Agreed Order Granting Motion to Determine Secured Status of Federal National Mortgage Association* (Doc. No. 139) where by the Court ruled that the allowed secured claim of FNMA with respect to the Taliaferro Property is $19,368.00. The Debtors and FNMA also entered into a stipulation regarding an agreed plan treatment (Doc. No. 134) ), the provisions of which are incorporated by reference. The Debtor will pay this allowed secured claim as a re-amortized first mortgage with interest at a rate of 5.25% in equal monthly installments over a period of 360 months of $106.95 each. The escrow portion of the payment for property tax and property insurance shall be added to the monthly principal and interest payment amount and calculated in any new payments to be made under the Plan. The Debtors remain liable for all post-petition taxes and insurance advanced by FNMA. The balance of this claim shall be treated as an allowed unsecured claim. Missed adequate protection payments shall be paid within thirty (30) days of confirmation, $427.80 being due as of October 1, 2013.

4.11.3 Mortgage and Liens. The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.12    CLASS 12 - SECURED CLAIM OF ONE WEST BANK, FSB ("One West") - 8517 North Huntley, Tampa, Florida ("Huntley Property").**

4.12.1 Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.12.2 Treatment.    The Court has entered an *Order Granting Motion to Determine Secured Status of One West Bank, FSB* (Doc. No. 116), whereby the Court ruled that One West would have an allowed secured claim of $18,155.00 on account of the mortgage on the Huntley Property and that the balance of this claim would be a general unsecured claim. Therefore, One West shall have an allowed secured claim of $18,155.00 on account of this Class 12 secured claim and the mortgage on the Huntley Property. Monthly payments on this allowed secured claim will be equally amortized over the balance of the loan term which expires on June 1, 2036, at an interest rate of 5.25% per annum. Escrow payments and other amounts required by the loan documents will be made by the Debtor under the plan. The balance of this claim shall be treated as an allowed unsecured claim.

4.12.3 Mortgage and Liens. The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this

Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.13    CLASS 13 - SECURED CLAIM OF HSBC BANK USA ("HSBC") - 8518 North Taliaferro, Tampa, Florida (8518 Property").**

4.13.1 Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.13.2 Treatment.    The Debtors and HSBC entered into a stipulation (Doc. No. 128) regarding the amount of the allowed secured claim of HSBC on account of the mortgage on the 8518 Property. Based on the stipulation, the Court entered an Order (Doc. No. 129) whereby the Court ruled that HSBC will have an allowed secured claim of $29,856.00 and that the remainder of the claim of HSBC will be deemed an unsecured claim. Therefore, HSBC shall have an allowed secured claim of $29,856.00 on account of this Class 13 secured claim and the mortgage on the 8518 Property. Monthly payments on this allowed secured claim will be equally amortized over the balance of the loan term which expires on October 1, 2036, at an interest rate of 5.25% per annum. Escrow payments and other amounts required by the loan documents will be made by the Debtor under the plan. The balance of this claim shall be treated as an allowed unsecured claim.

4.13.3 Mortgage and Liens.  The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

**4.14    CLASS 14 - SECURED CLAIM OF US Bank National Association, as Successor Trustee ("US Bank") - 13343 Gulf Blvd., #15, Madeira Beach, Florida ("Gulf Property").**

4.14.1 Impairment and Voting. This Claim is Impaired by this Plan and the holder of this Claim is entitled to vote to accept or reject this Plan.

4.14.2 Treatment.    With respect to this allowed secured claim of US Bank on the Gulf Property, the Court entered an *Agreed Order Granting Motion to Determine Secured Status of US Bank National Association, as Successor Trustee to Bank of America, National Association, (Successor by Merger to LaSalle Bank National Association) as Trustee for LXS 2006-8* (Doc. No. 161), the provisions of which are incorporated by reference. US Bank shall have an allowed secured claim in the amount of $65,018.00. Monthly payments on this allowed secured claim will be equally amortized over the balance of the loan term which expires on November 1, 2035, at an interest rate of 5.25% per annum. There will be no balloon payment. The Debtor will reimburse US Bank any post-petition tax or insurance advances over the life of the Plan. Escrow payments will be made by the Debtor under the Plan. The balance of this claim shall be treated as an allowed unsecured claim.

4.14.3 Mortgage and Liens. The holder of this Claim shall retain its lien on the real property of the Debtors, to the same extent, validity and priority as existed on the Petition Date until this Allowed Claim is paid, unless the holder of this Secured Claim and the Debtors or the Reorganized Debtors, as the case may be, agree to a different treatment thereof.

### 4.15    CLASS 15 - GENERAL UNSECURED CLAIMS.

4.15.1 Impairment and Voting. Class 15 Claims are impaired by the Plan and holders of Class 15 Claims are entitled to vote to accept or reject this Plan.

4.15.2 Treatment.    The holders of claims in this class will receive their pro-rata share of monthly payments made by the Debtors of their net projected disposable income paid over 5 years from the Effective Date of the Plan, which payments, regardless of the calculation of the Debtors' net projected disposable income, will be at least $500.00 per month. The holders of claims in this class will receive their pro-rata share of monthly payments made by the Debtors of their net projected disposable income paid over 5 years from the Effective Date of the Plan, which payments, regardless of the calculation of the Debtors' net projected disposable income, will be at least $500.00 per month.

4.15.3 Liens. Any Lien or Security Interest granted to, held or claimed by the holder of a Class 15 Claim on any assets or property of any of the Debtors, unless the holder of such Claim can establish that any security interest or lien was perfected as of the Petition Date by a properly filed and effective financing statement, or other method of perfection under applicable law, shall be deemed avoided as of the Effective Date and shall be of no further force and effect. To the extent any holder of a Class 15 Claim establishes proper perfection of such Lien, the holder will retain such Lien until such holder receives property equal to the value of their perfected interest in the property of Debtors.

### 4.16    CLASS 16 – EQUITY INTEREST OF JOHN AND MELISSA ESCOBIO

4.16.1 Impairment and Voting. The Class 16 Equity Interest is not impaired and the holder of this interest is presumed to have accepted the Plan and is not entitled to vote.

4.16.2 Treatment.    John and Melissa Escobio shall retain all of their property which shall be re-vested in John and Melissa Escobio.

### ARTICLE 5
### MEANS OF IMPLEMENTATION
### AND EFFECT OF CONFIRMATION OF PLAN

5.1    Plan Funding and Exit Financing. The cash payments under this Plan have been and/or will be generated from cash on hand both saved and from tax refunds, the Debtors' exempt funds on hand on the Effective Date, the Debtors' exempt salary going forward and rentals received from the properties described herein.

5.2     Continuation of Bankruptcy Injunction or Stays. All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

5.3     Revesting of Assets. Except as otherwise provided by this Plan, upon the Effective Date, title to all properties and assets of the Debtors shall revest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances and interests of creditors and (except those Claims, Liens, encumbrances and interests created or permitted to continue to be retained pursuant to this Plan) and the Confirmation Order shall be a judicial determination of discharge and extinguishment of all Claims, Liens or Equity Interests (except those created or permitted to continue to be retained pursuant to this Plan). All pre-Effective Date Claims, liabilities and obligations of the Debtors are treated and/or discharged in accordance with the terms of this Plan and, except as otherwise set forth herein, shall not in any manner be (or be deemed to be) transferred or assumed by the Reorganized Debtors. On the Effective Date, or as soon thereafter as practicable, the Reorganized Debtors shall make all Distributions required under this Plan in satisfaction of Allowed Claims against the Debtors in full and final satisfaction of said Claims.

5.4     General Release of Liens. Except as otherwise provided in this Plan, or in any contract, instrument, indenture or other agreement or document created in connection with this Plan or the implementation thereof, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests against property of the Estate are hereby released and extinguished, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests will revert to the Reorganized Debtors as applicable, and the successors and assigns thereof.

5.5     Full and Final Satisfaction. All payments and all Distributions hereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims and Equity Interests, except as otherwise provided in this Plan.

5.6     Waiver of Avoidance Actions. The Debtors shall initiate any Avoidance Actions and/or equitable subordination action against secured creditor(s) within ninety one hundred eighty (180) days of the Effective Date. After such date, the Debtors and Reorganized Debtors, for and on behalf of themselves and their Estate, hereby waive and release any Avoidance Actions; provided, however, that foregoing waiver and release shall not apply to any such causes of Action that are pending on such date.

5.7     Termination of Subordination Rights. Except as otherwise provided in this Plan, the classification and manner of satisfying all Claims and Equity Interests under this Plan take into consideration all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, Sections 510(b) and (c) of the Bankruptcy Code or otherwise, that a holder of a Claim or Equity Interest may have against other Claim or Equity Interest holders with respect to any Distribution made pursuant to this Plan. On the Effective Date, all contractual, legal or equitable subordination rights that a holder of a Claim or Equity Interest may have with respect to any Distribution to be made pursuant to this Plan shall be

discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined and Distributions pursuant to this Plan shall not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by any beneficiary of such terminated subordination rights.

5.8    No Successor Liability; No Liability for Certain Released Claims. Except as otherwise expressly provided in this Plan, with respect to the Reorganized Debtors, the Reorganized Debtors do not, pursuant to this Plan, assume, agree to perform, pay, or indemnify creditors for any Claims, liabilities or obligations of the Debtors relating to or arising out of the business operations or assets of the Debtors whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to, the Confirmation Date. The Reorganized Debtors are not successor to the Debtors by reason of any theory of law or equity, and shall have no successor or transferee liability of any kind or character, except that Reorganized Debtors shall assume the obligations specified in this Plan and the Confirmation Order.

5.9    Administration Pending Effective Date. Prior to the Effective Date, the Debtors shall continue to operate their businesses as debtor-in-possession, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. After the Effective Date, the Reorganized Debtors may operate its business, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, but subject to the continuing jurisdiction of the Bankruptcy Court as set forth herein.

5.10    Setoffs. Nothing contained in this Plan shall constitute a waiver or release by any Debtors of any rights of setoff a Debtors may have against any Person unless otherwise agreed in writing by the Debtors prior to the Effective Date or the Reorganized Debtors after the Effective Date.

5.11    Post-Confirmation Fees, Final Decree. The Reorganized Debtors shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. § 1930(a)(6) and the filing of post-confirmation disbursement reports, until a final decree is entered. A final decree shall be entered as soon as practicable after distributions have commenced under this Plan.

5.12    Documentary Stamp and Other Taxes and Fees. In connection with any exit financing or sale to effectuate and implement this Plan or with respect to the sale of the Residence (as defined in the Disclosure Statement) all parties shall be deemed exempt from any documentary stamp and other taxes and fees imposed by any governmental entity, pursuant to sections 1145 and/or 1146 of the Bankruptcy Code.

5.13    Acceptance of Distribution. Notwithstanding anything to the contrary herein, upon receipt of and acceptance of a full and final Distribution from the Reorganized Debtors, any and all Claims and Causes of Action as between the Debtors and the claimant accepting the Distribution shall be fully and finally resolved.

**ARTICLE 6**
**VOTING AND DISTRIBUTIONS; AND TREATMENT OF**
**DISPUTED, CONTINGENT AND UNLIQUIDATED**
**CLAIMS AND EQUITY INTERESTS**

6.1    Voting of Claims. Each holder of an Allowed Claim in an impaired Class which is entitled to retain or receive property under this Plan shall be entitled to vote separately to accept or reject this Plan and indicate such vote on a duly executed and delivered Ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan, or any other order or orders of the Bankruptcy Court. In voting on the Plan, Rule 30180-1(c) of the Local Rules, including the following, govern:

6.1.1    Ballots that are unsigned or where a company name is not shown on the signature line will not be counted either as an acceptance or rejection;

6.1.2    Where the amount shown as owed on the Ballot differs from the scheduled claim and a proof of claim has been filed, the amount shown on the proof of claim will be used for the purpose of determining the amount voting. If no proof of claim is filed, the amount shown on the schedules will be used;

6.1.3    Ballots that do not show a choice of either acceptance or rejection will not be counted as either accepting or rejecting the Plan;

6.1.4    Ballots that are filed after the last date set for the filing of Ballots will not be counted as either accepting or rejecting the Plan without leave of the Court; and

6.1.5    Where duplicate Ballots are filed, and one elects to accept, and one elects to reject the Plan, neither Ballot will be counted unless the later Ballot is designated as amending the prior Ballot.

6.2    Nonconsensual Confirmation.  If any impaired Class entitled to vote shall not accept this Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired Class is deemed to have rejected this Plan, the Debtors reserve the right (a) to undertake to have the Bankruptcy Court confirm this Plan under Section 1129(b) of the Bankruptcy Code and (b) to amend this Plan in accordance with Article 13.3 of this Plan to the extent necessary to obtain entry of the Confirmation Order.

6.3    Method of Distributions under this Plan.

6.3.1    In General. Subject to Bankruptcy Rule 9010, all Distributions under this Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim or Interest at the

address of such holder as listed in the Debtors' books and records or on the Schedules as of the Record Date, unless the Reorganized Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address, if any, for such holder different from the address reflected in the Debtors' books and records or on the Schedules.

6.3.2   Distributions of Cash.   Any payment of Cash made by the Reorganized Debtors pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer.

6.3.3   Timing of Distributions. Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

6.3.4   Fractional Dollars. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollars (rounding down in the case of $0.50 or less and rounding up in the case of more than $0.50).

6.3.5   Unclaimed or De Minimis Distributions. If the holder of an Allowed Claim fails to negotiate a check issued to such holder within ninety (90) days of the date such check was issued, the amount of Cash attributable to such check will be deemed to be unclaimed, such holder's Claim will no longer be deemed to be Allowed, and such holder will be deemed to have no further Claim in respect of such check and will not participate in any further Distributions under the Plan. De minimums Distributions of Cash or Property having a value less than five dollars ($5.00) shall not be made. If a Distribution pursuant to the Plan to any holder of an Allowed Claim is returned to the Debtors due to an incorrect or incomplete address for the holder of such Allowed Claim, as to such Distribution, within ninety (90) days of the return of such Distribution the amount of Cash attributable to such Distribution will be deemed to be unclaimed and such holder will be deemed to have no further Claim in respect of such Distribution and will not participate in any further Distributions under the Plan.

6.3.6   Distributions to Holders as of the Confirmation Date. As of the close of business on the Confirmation Date, the claims register (for Claims) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests unless pursuant to properly noticed transfer of claim pursuant to Fed.R.Bankr.P. 3003, as reflected on the Claims Register maintained by the Clerk of the Bankruptcy Court.

6.3.7   Objections to and Resolution of Administrative Claims, Claims and Equity Interests. Except as to applications for allowance of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code, any party in interest may file objections to the allowance of any Administrative Claims, Claims and Equity Interests subsequent to the Confirmation Date. All objections shall be litigated to Final Order; provided, however, that the Reorganized Debtors shall have the exclusive authority to compromise, settle, otherwise resolve or withdraw any objections filed by the Reorganized Debtors. If any joinder is made with respect to an objection, and the objection is subsequently withdrawn, the joinder shall be deemed withdrawn as well. Unless otherwise ordered by the Bankruptcy Court, all objections to the allowance of Administrative Claims, Claims or Equity Interests that are the subject of

proofs of claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses), shall be filed and served upon the holder of the Administrative Claim, Claim or Equity Interest as to which the objection is made as soon as is practicable, but in no event later than thirty (30) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

6.4     Estimation of Claims.  The Debtors, at any time and from time to time, may request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Entity, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

6.5     Distributions Upon Allowance of Disputed Claims.  The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive Distributions from the Debtors on account of such Allowed Claim as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with this Plan based upon the Distributions that would have been made to such holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date plus any interest, dividends or other Distributions earned thereon and less any taxes, charges, fees or costs chargeable to such property. No holder of a Disputed Claim shall have any Claim against Debtors with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest, dividends or other Distribution on such Disputed Claim except as provided in this Section.

6.6     No Distribution in Excess of Allowed Amounts.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim or Equity shall receive in respect of such Claim any distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim or Interest.

6.7     No Post-Petition Interest, Costs, or Attorney Fees.  Except as may be specifically provided under Section 506(b) of the Bankruptcy Code, an Allowed Claim or Allowed Interest shall not include, and no Distribution shall be made on account of, any interest, costs, or attorney's fees accrued or incurred to the holder of such Claim or Equity Interest after the Petition Date.

## ARTICLE 7
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Executory Contracts and Unexpired Leases.

7.1.1    Subject to Section 7.1.2 of this Plan, (i) any unexpired lease or executory contract that has not been expressly assumed by the Debtors or treated in this Plan with the Bankruptcy Court's approval on or prior to the Confirmation Date shall, as of the Effective Date, be deemed to have been rejected by the Debtors unless there is pending before the Bankruptcy Court on the Effective Date a motion to assume unexpired lease or executory contract; (ii) the entry of the Confirmation Order shall be deemed to be a rejection of all then outstanding unexercised stock options, warrants and similar rights; and (iii) in accordance with Section 1123(a)(5)(G) of the Bankruptcy Code, on the Effective Date or such other time as may be agreed to by the Debtors and the claimant, Debtors shall cure all defaults under any executory contract or unexpired lease assumed pursuant to this Section.

7.1.2    Cure Rights for Executory Contracts and Unexpired Leases Assumed Under the Plan. Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan in default shall be satisfied under Section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; *provided, however*, that the Debtors, in the exercise of its sound business judgment, conclude that the amount of the Cure obligation as determined by such Final Order, renders assumption of such executory contract or unexpired lease unfavorable to the Debtors, and elect to reject such contract or lease.

7.1.3    Assumption of Government Licenses. In the event that any license granted to the Debtors by a governmental unit, and in effect immediately prior to the Effective Date, is considered to be an executory contract and is not otherwise terminated or rejected by the Debtors, such license shall be deemed to be assume pursuant to Section 365 of the Bankruptcy Code under the Plan.

7.1.4    Limited Extension of Time to Assume or Reject.

7.1.4.1 In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Bankruptcy Court determining that the contract or lease is executory or unexpired. The deemed rejection provided for in Section 7.1 of the Plan shall not apply to any such contract or lease.

7.1.4.2 Unscheduled Executory Contracts. In the event the Debtors become aware after the Confirmation Date of the existence of an executory contract or unexpired lease that was not included in the Schedules, the right of the Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Debtors become aware of the existence of such contract or lease. The deemed rejection provided for in Section 7.1 of the Plan shall not apply to any such contract or lease.

7.1.4.3 Post-Petition Contracts and Leases. The Debtors shall not be required to assume or reject any contract or lease entered into by the Debtors after the Petition Date. Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date, unless the Debtors have obtained a Final Order of the Bankruptcy Court approving rejection of such contract or lease.

7.2    Claims Deadline for Filing Proofs of Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan. Claims arising out of the rejection of an executory contract or unexpired lease designated for rejection hereunder or pursuant to the Confirmation Order, must be filed with the Bankruptcy Court and served upon the Debtors by no later than 30 days after the notice of entry of an order approving such rejection or as otherwise may be provided in the Confirmation Order. Any Claims not filed within such time will be forever barred from assertion against the Debtors, the Estate and its property, and the holders thereof shall not be entitled to any Distribution under this Plan or otherwise from the Debtors. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under this Plan.

## ARTICLE 8
## DISCHARGE

8.1    Discharge. Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or this Plan, the Distributions to unsecured creditors under the applicable terms and conditions of this Plan are in full and final satisfaction, settlement, release and discharge as against the Debtors of any debt that arose before the Effective Date, and any debt of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims and Equity Interests of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim or proof of interest based on such Debt, obligation or Equity Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim or Equity Interest is Allowed under Section 502 of the Bankruptcy Code or (iii) the holder of such Claim or Equity Interest has accepted this Plan. Upon payment to unsecured creditors as described herein, the Court shall grant a discharge under 11 USC 1141(d)(5)(A).

8.2    Injunction Related to Discharge. As of the Effective Date and subject to its occurrence, all Persons that have held, currently hold or may have asserted, directly, indirectly, derivatively or otherwise, a Claim, a Cause of Action or an Equity Interest or other right of a holder of an Equity Interest that is discharged, released or terminated pursuant to this Plan, are hereby permanently enjoined from commencing or continuing, directly or indirectly, in any manner or

27

in any place, any action or other proceeding, enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, creating, perfecting or enforcing any lien or encumbrance, asserting a setoff, or right of subrogation of any kind against any Debt, liability or obligation due to any such releasing Person, and from commencing or continuing any action, in any manner or in any place where the foregoing does not comply with or is inconsistent with the provisions of this Plan, and the Confirmation Order shall provide for such injunctions.

## ARTICLE 9
## EFFECTIVENESS OF THIS PLAN

9.1     Conditions to Confirmation. It is a condition to the entry of the Confirmation Order that the following conditions have been satisfied or waived pursuant to Section 9.3 of this Plan:

9.1.1   The Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors; and

9.2     Conditions Precedent to Effectiveness. This Plan shall not become effective unless and until the following conditions shall have been satisfied or waived pursuant to Section 9.3 of this Plan:

9.2.1   The Confirmation Order, in form and substance reasonably acceptable to the Debtors, shall have been entered by the Bankruptcy Court and shall have become a Final Order:

9.2.2   Each of the Plan Documents in form and substance reasonably acceptable to the Debtors shall have been effected or executed and delivered;

9.2.3   All actions, other documents and agreements necessary to implement this Plan shall have been effected or executed and delivered; and

9.3     Waiver of Conditions. One or more of the conditions contained in Section 9.1 and Section 9.2 of this Plan may be waived with the prior execution of a written consent by or on behalf of the Debtors and, in its judgment reasonably exercised.

9.4     Effect of Failure of Conditions. In the event that one or more of the conditions specified in Section 9.2 of this Plan have not occurred on or before 120 days after the Confirmation Date, upon notification submitted by the Debtors to the Bankruptcy Court, (a) the Confirmation Order shall be vacated, (b) no Distributions under this Plan shall be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## ARTICLE 10
## RETENTION OF JURISDICTION

10.1    Retention of Jurisdiction.  Following the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

10.1.1  To hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims;

10.1.2  To hear and determine any and all applications by Professionals for compensation and reimbursement of reasonable fees and expenses;

10.1.3  To hear and determine any and all pending applications for the rejection and disaffirmance of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

10.1.4  To liquidate any Disputed Claim;

10.1.5  To enforce the provisions of this Plan;

10.1.6  To enable the Debtors to prosecute any and all proceedings which have been or may be brought prior to the Effective Date, or subsequent to the Effective Date, to set aside liens or encumbrances and to recover any transfers, assets, properties, or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or any federal state, or local laws;

10.1.7  To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out its purpose and the intent of this Plan;

10.1.8  To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated herein;

10.1.9  To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

10.1.10  To hear and determine any matters or disputes respecting the Debtors under Sections 1113 and 1114 of the Bankruptcy Code; and

10.1.11  To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1    Effectuating Documents and Further Transactions.    The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

11.2    Exemption from Transfer Taxes. In accordance with Section 1146(c) of the Bankruptcy Code the issuance, transfer, or exchange of a security the making or delivery of an instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, may not be taxed under any law imposing a stamp or similar tax. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

11.3    Amendment or Modification of this Plan. Alterations, amendments or modifications of this Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that this Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with Section 1125 of the Bankruptcy Code. This Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms this Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder. The Debtors may, insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit hereto or in any Plan Document.

11.4    Severability. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in this Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision hereof.

11.5   Revocation or Withdrawal of this Plan. The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date. If the Debtors revoke or withdraws this Plan prior to the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against of the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

11.6   Plan Supplement. The plan supplement containing drafts or final versions of the Plan Documents shall be filed with the Bankruptcy Court and served upon the Office of the United States Trustee as early as practicable (but in no event later than five (5) days) prior to the deadline established by the Bankruptcy Court for the filing of acceptances or rejections of the Plan, or on such other date as the Bankruptcy Court may establish, unless served with the Disclosure Statement. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to the Debtors in accordance with Section 12.9 hereof. The Plan Supplement is incorporated into and a part of this Plan as if set forth in full herein.

11.7   Binding Effect. This Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns.

11.8   No Preclusive Effect. Any findings of fact which may be included in the Confirmation Order will not have any preclusive effect in connection with confirmation of any subsequently-filed plan of reorganization, which subsequently-filed plan of reorganization will be as a replacement and in lieu of this Plan or as this Plan may be amended.

11.9   Notices. All notices, requests and demands to or upon the Debtors to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:
**Leon A. Williamson, Jr.**
**Law Office of Leon A. Williamson, Jr., P. A.**
**306 South Plant Ave., Suite B**
**Tampa, FL 33606**
**Telephone 813-253-3109**
**Facsimile 813-253-3215**
**Counsel to the Debtors**

11.10   Governing Law. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan, provides otherwise, (i) all matters relating to corporate governance shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, and (ii) all rights relating to the debtor-creditor relationship between the Debtors and the holders of any Claim shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

11.11  Withholding and Reporting Requirements.  In connection with the consummation of this Plan, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

11.12  Allocation of Plan Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

11.13  Headings.  Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

11.14  Inconsistency.  In the event of any inconsistency between this Plan and the Disclosure Statement, any exhibit to this Plan or Disclosure Statement or any other instrument or document created or executed pursuant to this Plan, this Plan shall govern.

Dated October 1, 2013

**John R. Escobio and Melissa M. Escobio**
**Debtors-In-Possession**

By: _____
John R. Escobio

By: _____
Melissa M. Escobio